# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TIMOTHY INGRAM,                                Case No. 1:12-cv-158
     Petitioner,

                                           Dlott, J.

     vs.                                        Bowman, M.J.

WARDEN, CHILLICOTHE                        **REPORT AND**
CORRECTIONAL INSTITUTION,                  **RECOMMENDATION**
     Respondent.

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in

Chillicothe, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

This matter is before the Court on the petition, respondent's return of writ, and petitioner's reply.

(Docs. 1, 6, 8).

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals, First Appellate District, provided the following summary of

the facts that led to petitioner's conviction and sentence:[1]

> On August 29, 2009, at 1:40 a.m., Ingram was driving his car and attempted to enter
> I-275. At the time, he was under a lifetime driver's license suspension from
> Indiana. Instead of using the entry ramp, which was under construction, Ingram
> drove up the exit ramp. He passed several "Wrong Way" signs and proceeded
> north on the southbound portion of the highway. He entered the center lane of
> travel and, shortly thereafter, struck a car driven by Dale Smith and occupied by
> Velma Johnson. As a result of the accident, Smith died and Johnson received
> significant injuries.
>
> While at the scene of the accident, Ingram admitted that he had been drinking prior
> to the accident. Deputies found an empty beer bottle and several empty 16-ounce

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court
shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because
petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual
findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,*
365 F.3d 487, 493-94 (6th Cir. 2004).

beer cups that were still wet in Ingram's vehicle.   Ingram was taken to the hospital, where he was read his Miranda rights.   He told deputies that he had consumed a six-pack of beer and taken pain medication prior to the accident.   He also said that he drank and took drugs on a daily basis.   Ingram refused to submit to a blood test and deputies obtained a warrant.   The amount of blood drawn was not enough to conduct both an alcohol and a drug test, so deputies opted for an alcohol test.   The blood tested at slightly under the legal limit.

(Doc. 6, Ex. 13, pp. 1-2).

## II.    PROCEDURAL HISTORY

### State Trial Proceedings and Appeal

On September 10, 2009, the Hamilton County, Ohio, grand jury returned a four count indictment charging petitioner with two counts of Aggravated Vehicular Homicide, one count of Aggravated Vehicular Assault and one count of Vehicular Assault.   (Doc. 6, Ex. 1).   One count of Aggravated Vehicular Homicide, under Ohio Rev. Code § 2903.06(A)(1)(a), and the Aggravated Vehicular Assault count charged petitioner with causing another's death and serious injury as a result of operating a vehicle while under the influence of alcohol or drugs.   *See* Ohio Rev. Code §§ 2903.06(A)(1)(a) & 2903.08(A)(1)(b).   The remaining two counts were lesser-included offenses premised on petitioner causing death and serious injury due to the reckless operation of a motor vehicle.   *See* Ohio Rev. Code §§ 2903.06(A)(2)(a) & 2903.08(A)(2)(b).

On February 18, 2010, through counsel, petitioner filed a motion to suppress statements made by petitioner at the accident scene and hospital.   (Doc. 6, Ex. 2).   On March 1, 2010, the trial court overruled petitioner's motion to suppress.   (Doc. 6, Ex. 3).   On the same day petitioner waived his right to a trial by jury and elected to proceed with a bench trial.   (Doc. 6, Ex. 4).

At the close of the prosecution's case, petitioner moved for a judgment of acquittal on the

2

Aggravated Vehicular Homicide and Aggravated Vehicular Assault counts charging petitioner with operating a vehicle under the influence of alcohol or drugs. (*See* Doc. 6, Ex. 5). The trial court overruled petitioner's motion on April 23, 2010. *Id.* On June 4, 2010, the trial court found petitioner guilty of one count of Aggravated Vehicular Homicide and one count of Vehicular Assault, the lesser-included offenses. (Doc. 6, Ex. 7). The court found petitioner not guilty of the remaining counts of Aggravated Vehicular Homicide and Aggravated Vehicular Assault. (Doc. 6, Ex. 8). Petitioner was sentenced to a total aggregate sentence of thirteen (13) years in prison. (Doc. 6, Ex. 9).

On July 2, 2010, through counsel, petitioner filed a notice of appeal in the Ohio Court of Appeals. (Doc. 6, Ex. 10). In his appellate brief, petitioner raised the following five assignments of error:

1. The trial court erred to the prejudice of the Defendant-Appellant by finding him guilty of aggravated vehicular homicide and vehicular assault, as those findings were not supported by sufficient evidence.

2. The trial court erred to the prejudice of the Defendant-Appellant by finding him guilty of aggravated vehicular homicide and vehicular assault, as those findings were contrary to law.

3. The trial court erred to the prejudice of the Defendant-Appellant by overruling his Motion for Acquittal under Ohio Criminal Procedure Rule 29.

4. The trial court erred to the prejudice of Defendant-Appellant by imposing a sentence that is an abuse of discretion.

5. The trial court erred to the prejudice of Defendant-Appellant by not granting his motion to suppress his statements.

(Doc. 6, Ex. 11). On May 31, 2011, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 6, Ex. 13).

Petitioner, through counsel, filed a notice of appeal to the Ohio Supreme Court on June 15,

2011.  (Doc. 6, Ex. 14).   In his memorandum in support of jurisdiction petitioner raised the

following five propositions of law:

1. The trial court erred to the prejudice of the Appellant by finding him guilty of aggravated vehicular homicide and vehicular assault, as those findings were not supported by sufficient evidence, and the State failed to meet its burden of proof.

2. The trial court erred to the prejudice of the Appellant by finding him guilty of aggravated vehicular homicide and vehicular assault, as those findings were contrary to law, and were against the manifest weigh of the evidence.

3. The trial court erred to the prejudice of the Appellant by overruling his Motion for Acquittal under Ohio Criminal Procedure Rule 29, as the State failed to meet its burden of proving that Appellant was guilty of aggravated vehicular homicide and vehicular assault.

4. The trial court erred to the prejudice of Appellant by imposing a sentence that is contrary to law because it was excessive.

5. The trial court erred to the prejudice of Appellant by not granting his motion to suppress his statement, as Appellant was denied his right to counsel and was unable to give a knowing and voluntary waiver of his rights.

(Doc. 6, Ex. 15).   On October 5, 2011 the Ohio Supreme Court denied leave to appeal and

dismissed the appeal "as not involving any substantial constitutional question."   (Doc. 6, Ex. 17).

### Federal Habeas Corpus

Petitioner filed the instant federal habeas petition on February 23, 2012.   (Doc. 1).

Petitioner raises the following five grounds for relief in the petition:

**GROUND ONE:**   The convictions for vehicular homicide and vehicular assault are against the sufficiency of evidence, and against the manifest weight.

Supporting facts:   There should not have been a finding of guilt on []either charge as there was ample evidence that petitioner was perhaps negligent but was not reckless, and the "wrong way" signs were hidden by trees nor was there a "do not enter" sig[]n, anything on the road approaching the turn for the ramps that would tell a driver that both the exit and the entrance ramps were going to proceed in the same lane of travel.

4

**GROUND TWO:**   The trial court erred by finding [petitioner] guilty of vehicular homicide and vehicular assault as both findings were contrary to law.

Supporting Facts:   The trial court lost its way in concluding petitioner was guilty of agg[ravated] Vehicular homicide and vehicular assault.   If this court reviews the entire record, including the transcripts, there can only be one conclusion and that's that the convictions were against the manifest weigh of the evidence and a new trial should be ordered.

**GROUND THREE:**   The trial court erred by overruling defendants motion for acquittal under Ohio Criminal Rule 29 on both charges.

Supporting facts:   There was no evidence to support the trial courts verdict as the state failed to meet its burden of proving petitioner was guilty of murder/vehicular homicide and vehicular assault.

**GROUND FOUR:**   The trial court erred by imposing a sentence that is contrary to law because it was excessive.

Supporting Facts:   The trial court violated O.R.C. 2929.12 through 2929.14.

**GROUND FIVE:**   Trial court erred by not granting his motion to suppress his statement as appellant was denied his right to counsel and was unable to give a knowing and voluntary waiver of his rights.

Supporting Facts:   Defendant should have been offered legal counsel during interrogations, as defendant was under influence of medication at the time of the interrogation.

(Doc. 1).

Respondent has filed a return of writ arguing that the petition should be denied.   (Doc. 6).

Respondent contends that petitioner's grounds for relief are either not cognizable in federal habeas corpus or without merit.

### III.    THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C.

§ 2254(d).   Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."   *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012).   "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"   *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.   *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards.   *See, e.g., Cullen v. Pinholster,* ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).   It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . .   This is a "substantially higher

threshold.". . .  To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).   The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d).   *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1092 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Harrington*, 131 S.Ct. at 786.   In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final."  *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim

7

addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at ___, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at ___, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

**A. Grounds One and Three are without merit and Ground Two is not cognizable in federal habeas corpus.**

In Grounds One and Three, petitioner contends that his convictions were not supported by sufficient evidence, in violation of the Fifth and Fourteenth Amendments. (Doc. 2; Doc. 8, pp. 8-11). In Ground Two, petitioner argues that his convictions were against the manifest weight of the evidence. (Doc. 8, pp. 13-14).

8

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's assignment of error challenging the sufficiency of the evidence.   The state appellate court rejected petitioner's claim as follows:

> In his first assignment of error, Ingram claims that his convictions were based upon insufficient evidence.   In his second, he claims that his convictions were against the manifest weight of the evidence.   In his third, he claims that the trial court improperly denied his motion for acquittal.   We address the assignments together.
>
> The standards for determining whether a conviction was based upon insufficient evidence or was against the manifest weight of the evidence are well established. When an appellant challenges the sufficiency of the evidence, we must determine whether the state presented adequate evidence on each element of the offense. The standard of review for the denial of a Crim.R. 29(A) motion to acquit is the same as the standard of review for the sufficiency of the evidence.   On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty.
>
> Ingram was convicted of aggravated vehicular homicide, which required that the state show that he had operated his vehicle in a criminally reckless manner and that that someone had died as a proximate result of his recklessness. R.C. 2903.06(A)(2). He was also convicted of vehicular assault, which required a showing that he had recklessly caused serious physical harm to another person while operating a motor vehicle. R.C. 2903.08(A)(2)(b).   Ingram argues that his driving did not rise to the level of recklessness and that his convictions were therefore improper.   We disagree.
>
> Ingram was driving while under a lifetime driving suspension from Indiana.   He passed several "Wrong Way" signs as he entered the interstate highway going in the wrong direction.   Once he entered the highway, it should have been apparent that he was going the wrong way when the other half of the highway was on the wrong side of his vehicle.   Instead of immediately attempting to pull to the side, Ingram moved to the center lane, where he struck the vehicle in which Smith was killed and Johnson was injured.   Based on the foregoing, there was sufficient evidence to convict Ingram, and we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice in finding him guilty. Ingram's first three assignments of error are overruled.

(Doc. 6, Ex. 13, pp. 2-3) (footnotes omitted).

As an initial matter, petitioner is not entitled to habeas relief on the basis of his manifest

9

weight of the evidence claim in Ground Two of the petition.   A "manifest weight of evidence"

claim, which is based on a state law concept that is "both quantitatively and qualitatively different"

from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida,* 457 U.S.

31, 41-47 (1982), and *State v. Thompkins*, 678 N.E.2d 541, 546 (1997), *superseded by state*

*constitutional amendment on other grounds in State v. Smith*, 684 N.E.2d 668 (1997), raises an

issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this.

*See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The Due Process Clause does not provide relief for defendants whose convictions are

against the manifest weight of the evidence, but only for those who have been convicted without

proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt.   *Walker v.*

*Engle*, 703 F.2d 959, 969 (6th Cir. 1983).   In the context of a claim alleging a violation of due

process, "sufficiency of the evidence" refers to the due process requirement that there be enough

evidence introduced in favor of the prosecution for a rational trier of fact to find each element of

the crime beyond a reasonable doubt.   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the

evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as

a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility

of witnesses to determine whether "the jury clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered."   *State v.*

*Martin*, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982).

"Since a federal habeas court does not function as an additional state appellate court, vested with

the authority to conduct such an exhaustive review, petitioner's claim that his convictions were

10

against the manifest weight of the evidence cannot be considered by this Court." *Mason v. Brunsman*, No. 1:07-cv-1020, 2009 WL 2169035, at *29 (July 16, 2009 S.D. Ohio ) (Spiegel, J.; Black, M.J.).   Accordingly, petitioner is not entitled to habeas relief based on his manifest weight of the evidence claim raised in Ground Two.

Petitioner's sufficiency of the evidence claims in Ground One and Three are without merit. Although the Ohio Court of Appeals only cited Ohio Supreme Court decisions in overruling petitioner's assignments of error, the state appellate court correctly identified the applicable standard of review established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), as governing the resolution of the constitutional issue.   As the state appellate court apparently understood, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson,* 443 U.S. at 319 (emphasis in original).

The State is not required under the Due Process Clause to rule out every hypothesis except that of guilt beyond a reasonable doubt.   *Id.* at 326.   Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."   *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983).   It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence.   *Jackson,* 443 U.S. at

11

319.   Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury.   *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction."   *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher*, 648 F.3d at 450.   Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime.   *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Furthermore, as discussed above, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited.   As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would."   The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1927 (2012); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1152 (2012).   Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt.   We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged.   Instead, we must determine

whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned concludes that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*. As the Ohio Court of Appeals reasonably determined, the prosecution offered sufficient evidence to support petitioner's convictions.

Under Ohio's Aggravated Vehicular Homicide statute, the prosecution was required to prove that petitioner recklessly caused the death of another while operating a motor vehicle. *See* Ohio Rev. Code § 2903.06(A)(2)(a). Similarly, with regard to the Vehicular Assault conviction, the state was required to prove that petitioner recklessly caused serious physical harm to another person while operating a motor vehicle. *See* Ohio Rev. Code § 2903.08(A)(2)(b). Under Ohio law "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." Ohio Rev. Code § 2901.22.

As noted by the Ohio Court of Appeals, during petitioner's trial the prosecution offered evidence that petitioner was operating his vehicle on a lifetime suspension as a "habitual lifetime offender" in Indiana.[2] (Doc. 7, Transcript p. 301). On the night of the accident petitioner admitted to having consumed a six pack of beer and taken pain medications prior to driving. *Id.* at 100, 166, 193. An empty beer bottle and several empty cups were found in the car, which were described as being wet and smelling of alcohol. *Id.* at 273. Although petitioner tested below the

---

2 At sentencing, petitioner indicated that he had been incarcerated on four prior driving-under-the-influence offenses. (Doc. 6, Transcript pp. 416-17). He also stated that he had convictions for driving under a lifetime suspension. *Id.*

13

legal limit, several officers testified that they noticed indications of impairment in dealing with petitioner.  *Id.* at 103, 174-75, 196-98.   Evidence was introduced that petitioner entered the interstate driving in the wrong direction, ignoring the fact that he was traveling on the left hand side of the highway divider and four signs stating that he was going the wrong direction.   *Id.* at 267, 304-306.   Trial testimony established that after merging into the center lane of the highway, petitioner's car crashed head on into the victims' vehicle, causing the death of Dale Smith and serious injuries to Velma Johnson.   *See id.* at 155, 269.

After a review of the entire record, viewing the evidence in the light most favorable to the prosecution, the undersigned finds that the evidence offered was constitutionally sufficient to sustain petitioner's convictions.   Although petitioner contends that the facts establish that he was merely negligent; that there were no cones directing traffic at the onramp intersection; the "wrong way" signs were obstructed by trees and there was no "do not enter" sign at the intersection; there was no light on the side of the street with the first "wrong way" sign; and "there was nothing on the road approaching the turn for the ramps that would warn a driver that both the exit and entrance ramps were going to proceed in the same lane of travel," (Doc. 8, p. 10-11), it is not the province of this court to reweigh the evidence on habeas review.   *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (noting that a habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court").   The Ohio Court of Appeals' adjudication of petitioner's sufficiency-of-evidence claims involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.

Accordingly, the undersigned concludes that petitioner is not entitled to relief based on the

14

claims raised in Grounds One, Two or Three of the petition challenging the sufficiency of the evidence supporting his convictions.

### B.  Ground Four is not cognizable in federal habeas corpus.

In Ground Four, petitioner contends that his sentence was excessive and violated Ohio Rev. Code §§ 2929.12 through 2929.14.   (Doc. 1, pp. 10-11).

Petitioner has not stated a cognizable claim in Ground Four to the extent that he contends that the Ohio trial court abused its discretion under Ohio law.   A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."   28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41; *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

On direct appeal petitioner argued that the consecutive terms of imprisonment imposed in his case were improper in light of the Supreme Court's decision in *Oregon v. Ice*, 555 U.S. 160 (2009).   Prior to *Ice*, the Ohio Supreme Court had ruled in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), that portions of Ohio's sentencing statutes, including the provision requiring the trial judge to make certain findings before imposing consecutive sentences, violated the defendant's Sixth Amendment right to a jury trial under the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296 (2004).   To remedy the constitutional defects, the *Foster* court severed the unconstitutional provisions and held, among other things, that the trial court had "full discretion" to impose consecutive prison terms without making findings or giving reasons for its decision. *Foster,* 845 N.E.2d at 497-99.   Nearly three years later, in *Ice*, the Supreme Court upheld the constitutionality of Oregon's sentencing statute, which like Ohio's pre-*Foster* statute required the

15

trial judge to make factual findings prior to imposing consecutive sentences. In so ruling, the Court reasoned that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment. *See Ice*, 555 U.S. at 167-69.

Therefore, because the Supreme Court explicitly held in *Ice* that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment, petitioner's claim challenging the consecutive sentences imposed in his case raises a state-law issue only, which does not give rise to a cognizable ground for federal habeas relief. *Cf. Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

Finally, to the extent that petitioner may be claiming his sentence violates the Eighth Amendment, his sentence does not constitute cruel and unusual punishment because it fell within the statutory maximum under the Ohio sentencing statute.[3] *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). The Constitution does not mandate proportionate sentences, *see Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), and "only an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995) (citing *Solem v. Helm,* 463 U.S. 277 (1983); *Rummel v. Estelle,* 445 U.S. 263 (1980); *United States v. Dumas,* 934 F.2d 1387 (6th Cir. 1990)). Petitioner's sentences fell within the statutory penalties and did not run afoul of the Eighth Amendment.

---

[3] As noted by the Ohio Court of Appeals in dismissing petitioner's excessive sentence claim on appeal, petitioner conceded that the sentences fell within the statutory range but argued that his receiving the statutory maximum amounted to an abuse of discretion. (Doc. 6, Ex. 13, pp. 3-4).

Accordingly, petitioner is not entitled to habeas corpus relief based on the excessive sentence claim raised in Ground Four of the petition.

### C.  Ground Five is without merit.

In Ground Five, petitioner asserts that statements he made to police officers following the accident violated his constitutional rights.   (Doc. 8, pp. 15-16).   Specifically, petitioner contends that his admission to drinking and taking pills prior to the accident should have been suppressed. According to petitioner, after being in a major automobile accident he was unable to give a knowing and voluntary waiver of his rights.   *Id.*

In overruling this assignment of error on direct appeal, the Ohio Court of Appeals found that petitioner was not "in custody" and, in any event, gave a voluntary waiver:

> In his final assignment of error, Ingram argues that the trial court erred when it denied his motion to suppress the statements he made to the deputies when he was at the hospital, because he had just been in an accident, he might have been under medication, and he had failed to sign the *Miranda* form for some reason.  We disagree.

> The record indicates that Ingram was not in police custody at the time he was being questioned.  He had not been arrested, and the deputies only engaged Ingram intermittently to the extent that hospital personnel would allow them.   In fact, one of the deputies testified on cross-examination that he was not worried about Ingram leaving the hospital because he "figured when [Ingram] was done he would be free to go."   Thus, Ingram's *Miranda* rights were not triggered.   The fact that his rights were read to him, regardless of whether he signed the form, does not change this result.

> Even if Ingram was in custody, the record supports the conclusion that Ingram understood his rights and voluntarily waived them.  Two deputies testified that they spoke to him and that he understood what was happening around him, that he gave appropriate answers to questions, and that he was otherwise lucid.   The deputy that read the *Miranda* rights to Ingram testified that Ingram understood what was read to him and that he voluntarily waived his rights and spoke to the deputies.   Although the deputy could not remember specifically why Ingram had not signed the waiver form, he believed that it had to do with his being treated at the time.   Other than conjecture in his brief regarding his injuries or the possibility that

17

he might have been medicated, there is no evidence in the record that Ingram's ability to understand and waive his rights was impaired to such a degree that his waiver was invalid.

Ingram's fifth assignment of error is overruled.

(Doc. 6, Ex. 13, pp. 4-5) (citations and footnotes omitted).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination, applicable to the States through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 8 (1964), forbids the State's use of statements, "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). An individual taken into custody is guaranteed the right to remain silent and to the assistance of counsel, either retained or appointed, during the custodial interrogation, and to be informed that anything he says can be used against him in a court of law. *Miranda*, 384 U.S. at 478-79. The interrogation of a suspect in custody who has not received these so-called *Miranda* warnings is "presumed compelled." *Oregon v. Elstad,* 470 U.S. 298, 317 (1985). *Miranda* warnings must be administered "in the context of custodial interrogations given 'the compulsion inherent in custodial surroundings.'" *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004) (quoting *Miranda*, 384 U.S. at 458).

A custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. (quoting *Miranda*, 384 U.S. at 444). The custody determination is an objective one that "must be determined based on how a reasonable person in the suspect's

situation would perceive his circumstances." *Id*.   The Court must consider (1) the circumstances surrounding the interrogation; and (2) whether a reasonable person would have felt at liberty to terminate the interrogation and leave.   *Id*. (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).   Factors relevant to the inquiry include: "the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told [he] need not answer the questions." *U.S. v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009).

In addition, before a confession is admissible, it "must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."   *Bram v. United States*, 168 U.S. 532, 542-43 (1897) (internal quotation and citation omitted); *see also Colorado v. Connelly,* 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment").   An admission is deemed to be coerced where the conduct of law enforcement officials was such as to overbear the accused's will to resist, thus bringing about a confession not freely self-determined.   *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)).   The ultimate question in coerced confession cases is whether the confession was voluntary, or in other words, "the product of an essentially free and unconstrained choice by its maker."   *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).

In determining whether a statement by a suspect is voluntary, the Court must consider "'whether a defendant's will was overborne by the circumstances surrounding the giving of a [statement].'"   *Dickerson v. United States,* 530 U.S. 428, 434 (2000) (quoting *Schneckloth,* 412

U.S. at 226).   Courts must consider the totality of the circumstances in determining the voluntariness of coerced statements, including: (1) whether there was police coercion; (2) the length of the interrogation; (3) the location of the interrogation; (4) the continuity of the interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and, (8) whether the suspect was advised of his or her *Miranda* rights. *Withrow v. Williams,* 507 U.S. 680, 693-94 (1993) (internal citations omitted).

After review of the record in this case, the undersigned finds that the Ohio Court of Appeals' decision was neither an unreasonable application of Supreme Court precedent nor based on an unreasonable determination of the facts.   As the Ohio appellate court reasonably determined, the record does not indicate that petitioner was in custody during any police questioning.

First, as to any comments made by petitioner at the scene of the accident, it is clear that petitioner was not in custody at the time.   Corporal Paul Naber testified that he arrived to the crash scene and attempted to help petitioner after he heard petitioner screaming for help.[4]   (Doc. 7, Transcript pp. 19-20).   Naber noticed that petitioner, who was pinned in his car at the time, was wearing a Gravelrama bracelet around his wrist, and inquired if he had attended the event.[5]   *Id.* at 21.   Petitioner responded affirmatively before asking Naber "Did I - - did I go the wrong way? Did I go the wrong way on the highway?"   *Id.*   After Naber pointed out that petitioner's car was the one facing the wrong direction, petitioner responded "Yea, I guess I did.   I did go the wrong way."   *Id.* at 21-22.   Naber testified that he then inquired if petitioner was drinking at the

---

4  Naber testified that petitioner was initially screaming "Oh, my God, did I - - did I kill those - - did I kill those old people there?"   *Id.* at 20.

5  The trial record indicates that Gravelrama is an off-road four-by-four event.   (*See* Doc. 7, Transcript p. 83).

Gravelrama event and petitioner responded "Yea, I was drinking.   Man - - man, I screwed up big time."   *Id.* at 22.   Naber indicated that his discussion was very quick, that petitioner was not under arrest at the time and that he did not threaten, coerce or promise petitioner anything for his statements.   *Id.* at 23.   Under these circumstances, it appears clear that any comment made by petitioner was not the result of a custodial interrogation.

Second, the record supports the Ohio Court of Appeals' determination that petitioner was not in police custody when questioned at the hospital.   Officers Lyons and Pfaffl testified that they went to the hospital in order to get a blood test from petitioner.   *Id.* at 28, 45.   Officer Lyons stated that his total interaction time with petitioner was "maybe an hour-and-a-half."   *Id.* at 37. During this time Lyons read petitioner his Miranda rights from an Advice of Rights form, which advised petitioner of his right to remain silent and right to speak to an attorney, amongst other things.   *Id.* at 28-30.   Lyons testified that petitioner appeared to understand the information and that he waived his rights.   *Id.* at 31.   He further stated that he believed that petitioner did not sign the form because doctors and nurses were working on him at the time.   *Id.* at 31, 35.   During the questioning, petitioner told the officers that he took Percocet and drank on a daily basis.   *Id.* at 32. He also indicated that he drank a six-pack and took pills prior to the accident.   *Id.* at 32, 46. Officer Pfaffl described petitioner's response to their questions as rambling, indicating that petitioner "made a bunch of statements in a very short period of time that were, basically, related to my first question to him, which was, "Have you been drinking?"   *Id.* at 51.   The officers both testified that at no point did they place petitioner under arrest, handcuff or threaten him, use coercive tactics or promise him anything for his statements.   *Id.* at 40, 46-47.   As noted by the appellate court, Lyons indicated that he thought petitioner would be free to leave the hospital after

21

he received medical attention.  *Id.* at 35-36.

Based on the record in this case, the Court cannot conclude that the Ohio Court of Appeals' decision was objectively unreasonable.   The state court reasonably determined that no custodial interrogation took place based on objective circumstances surrounding the interview.   Petitioner was not questioned at a police station, but in a hospital examination room where hospital personnel were present and attending to petitioner's injuries.   Petitioner was not formally arrested or accused of any crime at that time.   He was not handcuffed or physically restrained during the interview, nor did the officers limit petitioner's freedom of movement.   *See Panak*, 552 F.3d at 467.   He was advised of his rights to remain silent and to speak to an attorney.   He was never told he could not leave, nor did he ask the officers to leave or to cease their questions.   *See Joseph v. Coyle*, 469 F.3d 441, 467-468 (6th Cir. 2006).   As noted above, petitioner's response to the officers' questions was described as rambling, suggesting that the officers did not coerce him to make any statements.   The interview lasted roughly an hour and a half, "a length of time that compares favorably with other encounters [the Court has] deemed non-custodial."   *See Panak*, 552 F.3d at 467 (citing *United States v. Mahan*, 190 F.3d 416, 420, 422 (6th Cir. 1999) (hour-and-a-half interview)).   A reasonable person under these circumstances would have felt free to terminate the interrogation.   *Yarborough*, 541 U.S. at 664-65.   Moreover, even when certain facts point in favor of a finding that the defendant was in custody while others point to the opposite conclusion, the Supreme Court has concluded that on habeas review "differing indications lead us to hold that the state court's application of our custody standard was reasonable."   *Yarborough*, 541 U.S. 652, 665.   Therefore, petitioner is not entitled to habeas relief on his "in custody" claim.

22

Finally, even if the Court could conclude that petitioner was in custody, the Ohio Court of Appeals' decision that petitioner's statements were made voluntarily is neither contrary to nor an unreasonable application of controlling Supreme Court authority.   As noted by the Ohio appellate court on direct appeal, both officers testified that petitioner was responsive and lucid.   Petitioner was informed of and appeared to understand his rights.   In addition, although petitioner requested pain medication, no testimony was offered to suggest petitioner had been administered any medication that would impact his ability to understand and voluntarily waive his rights.   (*See* Doc. 7, Transcript pp. 36, 39, 54).   Accordingly, petitioner has not demonstrated that the Ohio Court of Appeals' determination that he voluntarily waived his rights was unreasonable in light of the record or an unreasonable application of Supreme Court precedent.   Petitioner is therefore not entitled to relief based on Ground Five of the petition.

Accordingly, in sum, petitioner is not entitled to habeas relief.   Having found that Grounds One, Three and Five are without merit and Grounds Two and Four are not cognizable in federal habeas corpus, it is recommended that petitioner's petition for a writ of habeas corpus be **DENIED** with prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

1.   Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2.    A certificate of appealability should not issue with respect to the grounds for relief set forth in the petition, which were addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."   *See Slack v. McDaniel*, 529 U.S. 473, 475

23

(2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b).

      3.   With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

 

                                         *s/ Stephanie K. Bowman*
                                       Stephanie K. Bowman
                                       United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TIMOTHY INGRAM,                              Case No. 1:12-cv-158
      Petitioner,

                                        Dlott, J.
      vs.                                    Bowman, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).